******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* GERRY L. GOODE
(AC 43841)

Prescott, Alexander and DiPentima, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of criminal damage to a landlord's property in the first degree, the defendant appealed to this court claiming that the state presented insufficient evidence to establish the element of specific intent. The defendant entered into a residential lease with the victim for a property in Windsor. Subsequently, the victim went to the property during the lease term and discovered that it was damaged. The victim informed the defendant that he wanted to return with a home improvement contractor to estimate the damage to the property. The defendant refused to allow the victim subsequent access to the property, and, when the victim and the contractor eventually returned, a police officer had to accompany them. *Held* that the defendant could not prevail on his claim that the state presented insufficient evidence to establish that he specifically intended to damage the victim's property: the state produced testimonial and photographic evidence of the substantial damage to the entirety of the victim's property, and this severe damage provided the jury with a basis to reasonably find the necessary specific intent to find the defendant guilty, and the jury reasonably could have inferred, from the extent of the damage, that the damage was not caused by accident or neglect; moreover, the defendant's conduct after damaging the victim's property indicated his consciousness of guilt, which the jury could have relied on to infer his specific intent.

Argued September 9—officially released October 5, 2021

*Procedural History*

Substitute information charging the defendant with the crimes of criminal damage to a landlord's property in the first degree and larceny in the sixth degree, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, and tried to the jury before *Prats, J.*; verdict and judgment of guilty of criminal damage to a landlord's property in the first degree, from which the defendant appealed to this court. *Affirmed.*

*Brian D. Russell,* for the appellant (defendant).

*Meryl Gersz,* deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott,* state's attorney, and *Donna Mary Parker,* senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Gerry L. Goode, appeals from the judgment of conviction, rendered after a jury trial, of criminal damage to a landlord's property in the first degree in violation of General Statutes § 53a-117e.[1] On appeal, the defendant claims that the state presented insufficient evidence to establish the element of specific intent. We disagree, and, accordingly, affirm the judgment of conviction.

The jury reasonably could have found the following facts. On September 2, 2014, the defendant entered into a residential lease with the victim, Daniel C. Nolan, with respect to property located at 26 Whitney Circle in Windsor. The property was in good condition at the time the lease commenced, and the defendant was obligated to maintain the property in a clean and safe condition.

In December, 2017, the defendant called the victim to request reimbursement for a repair to the furnace. The victim agreed to pay the defendant but also indicated that he wanted to inspect the property. The defendant initially demurred, but after several delays, he acquiesced to the victim's request. The victim went to the property at the end of December, 2017, to discover that the property was "very much trashed [and] destroyed." After some discussion, the victim informed the defendant that he wanted to return with a home improvement contractor to estimate the damage to the property. The defendant refused to allow the victim subsequent access to the property, so when the victim and the contractor eventually returned, a police officer had to accompany them. The victim also commenced eviction proceedings, which ultimately resulted in the defendant leaving the property on July 11, 2018.

Following the defendant's departure, the victim took numerous photographs depicting the damage to the entirety of the property. The victim contacted the police and Officer Michael Tustin commenced an investigation. Tustin described the entire property as "very damaged" and noted the "ripped up" carpets, the very strong smell of urine and feces, missing pieces of sheetrock from the walls, exposed electrical cable, the presence of garbage throughout, and significant water damage. The victim needed professional services to restore the property, which took approximately eight and one-half months. The restoration cost $25,600.

The state charged the defendant with criminal damage of a landlord's property in the first degree in violation of § 53a-117e, and larceny in the sixth degree in violation of General Statutes § 53a-125b. Following a two day trial, the jury found the defendant guilty with respect to the former and not guilty as to the latter. The court imposed a sentence of two and one-half years of incarceration, execution suspended, and three years

of probation. This appeal followed.

The defendant's sole claim on appeal is that the state failed to produce sufficient evidence that he specifically intended to damage the victim's property. "Our Supreme Court has noted that [a] party challenging the validity of the jury's verdict on grounds that there was insufficient evidence to support such a result carries a difficult burden. . . . In particular, before [an appellate] court may overturn a jury verdict for insufficient evidence, it must conclude that no reasonable jury could arrive at the conclusion the jury did. . . . Although the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense . . . each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . .

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"Additionally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Stephenson*, 207 Conn. App. 154, 164–65,      A.3d (2021).

We agree with the parties that § 53a-117e is a specific intent crime, because it requires, inter alia, that a tenant intentionally damage a landlord's property in an amount exceeding $1500. See, e.g., General Statutes § 53a-3.[2] "Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one. . . . [T]he [jury is] not bound to accept as true the defendant's claim of lack of intent or his explanation of why he lacked intent. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be

gleaned from circumstantial evidence . . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Pjura*, 200 Conn. App. 802, 808–809, 240 A.3d 772, cert. denied, 335 Conn. 977, 241 A.3d 131 (2020); see also *State* v. *Best*, 337 Conn. 312, 320, 253 A.3d 458 (2020) (state of mind of one accused of crime is often most significant and, at same time, most elusive element of crime charged, and, because it is practically impossible to know what accused is thinking or intending at given moment, state of mind usually proved by circumstantial evidence); *State* v. *Morlo M.*, 206 Conn. App. 660, 690,     A.3d (2021) (intent almost always proved by circumstantial evidence).

The state produced both testimonial and photographic evidence of the substantial damage to the entirety of the victim's property. This included holes in the sheetrock, shattered mirrored closet doors, broken closet doors, burn marks on a butcher block kitchen countertop, a damaged refrigerator, damage to vanities and kitchen cabinets, a broken railing, garbage throughout the property, mold and water damage, cracked and broken tile flooring, broken towel bars, damaged carpeting, hardwood and trim, and animal feces[3] in most of the rooms of the property. The severe and widespread damage provided the jury with a basis to reasonably find the necessary specific intent to find the defendant guilty of violating § 53a-117e. In other words, the jury reasonably could have inferred from the extent of the damages in different areas of the property that the damage was not caused by accident or neglect but, instead, was done with the specific intent to cause the damage. See, e.g., *State* v. *Stephenson*, supra, 207 Conn. App. 166 ("[w]e therefore also must bear in mind that jurors are not expected to lay aside matters of common knowledge or their own observations and experiences [and] [c]ommon sense does not take flight when one enters a courtroom" (internal quotation marks omitted)). Finally, the defendant's conduct after damaging the victim's property indicated his consciousness of guilt, which the jury could have relied on to infer his specific intent. See id., 171–72. Specifically, the defendant failed to notify the victim of the damage, initially delayed granting the victim access to the property, and refused to allow the victim and a contractor into the property until the police were called. On the basis of the totality of the evidence produced at trial by the state, and the reasonable inferences drawn therefrom, the jury reasonably could have found that the defendant specifically intended to damage the victim's property. For these reasons, we conclude that the defendant's sufficiency claim is without merit.

The judgment is affirmed.

[1] General Statutes § 53a-117e (a) provides: "A tenant is guilty of criminal

damage of a landlord's property in the first degree when, having no reasonable ground to believe that he has a right to do so, he intentionally damages the tangible property of the landlord of the premises in an amount exceeding one thousand five hundred dollars.''

[2] General Statutes § 53a-3 provides in relevant part: "(11) A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[3] Although the lease permitted the defendant to have two declawed cats on the property, when the victim inspected the property in December, 2017, he observed that dogs were present.

_____